**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

NANCY O'CHEL,

     Plaintiff,

v.                                                                      Case No. 13-13845

DAVID KITCHEN,

     Defendant.

                                              /

**OPINION AND ORDER DENYING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant David Kitchen's car rear-ended Plaintiff Nancy O'Chel's car while she was stopped at a stoplight.  Following the accident, O'Chel began experiencing chronic neck and back pain, and brought the instant action in Wayne County Circuity Court, alleging that Kitchen negligently struck her vehicle.  Kitchen removed the matter to federal court on the basis of diversity jurisdiction.  28 U.S.C. § 1331.  Following discovery, he moved for summary judgment, arguing that O'Chel's injuries do not constitute a serious impairment of body function within the meaning of Michigan's no-fault insurance act.  The matter is fully briefed, and no hearing is needed.  *See* E.D. Mich. LR 7.1(f)(2).  For the following reasons, Kitchen's motion for summary judgment will be denied.

**I.  BACKGROUND**

On October 20, 2012, Kitchen struck O'Chel's vehicle from behind while she was stopped at a stop sign.  (Dkt. # 15, Pg. ID 105–06, 109.)  She described the accident at her deposition:

> Well, because I was sitting there waiting for traffic to clear and it was just like a bomb going off and then my whole body went back and forth violently about four or five times.  My foot went off the brake, then I put it back on the brake and then I was just kind of stunned.  I just sat there for a few seconds.  I didn't know what was going on. . . . [The impact] sounded like an explosion.

(Dkt. # 17, Pg. ID 197.)  O'Chel was wearing her seatbelt at the time, and her vehicle's airbags did not deploy.  (*Id.*)  Photographs of O'Chel's vehicle reveal only minor damage.  (Dkt. # 15, Pg. ID 130–33.)  A police report prepared following the accident rated the damage to both vehicles as "1," and O'Chel's vehicle was still driveable. (Dkt. # 15, Pg. ID 105–06; Dkt. # 17, Pg. ID 197.)

O'Chel had substantial medical problems before her accident.  On March 6, 2012, after being diagnosed with breast cancer, she underwent a left modified radical mastectomy.  (Dkt. # 17, Pg. ID 202.)  On August 8, 2012, she visited her primary care physician, Dr. Michael Thibodeau, to discuss her progress with chemotherapy and the beginning of her radiation treatment.  (Dkt. #20, Pg. ID 310.)  O'Chel reported a history of migraines that had become more frequent with the chemotherapy.  She also reported that she had shoulder pain in her left shoulder prior to her mastectomy.  Following her mastectomy, she began experiencing pain in her right shoulder, especially at night.  (*Id.*)  Dr. Thibodeau examined her shoulder and found her pain to be consistent with strain involving the rotator cuff.  He did not find evidence of a tear, and advised O'Chel regarding stretching exercises she could perform to help alleviate her discomfort.  (*Id.* at 311.)  On August 10, 2012, in a visit to her oncologist, Dr. Vrushali Dabak, O'Chel complained of bone and joint aches, but otherwise appeared to be healing well.  (Dkt. # 17, Pg. ID 202.)  Due to her cancer treatments, O'Chel was placed on medical leave until November 12, 2012.  (Dkt. # 17, Pg. ID 206)

2

On October 22, 2012, two days after the accident,  O'Chel sought medical attention.  (Dkt. # 17, Pg. ID 192.)  Her primary care physician, Dr. Michael Thibodeau, reported that although she complained of neck and lower back pain, he did not find any evidence of neurologic deficit or a closed head injury.  (*Id.*, Pg. ID 215.)  He ordered an x-ray of her cervical spine, recommended gentle stretching, and noted that he did not recommend further imaging.  (*Id.*, Pg. ID 215–16.)  The x-ray revealed an "unremarkable cervical spine" with "[n]o evidence of fracture."  (Dkt. # 20, Pg. ID 308, 313.)  On October 29, 2012, O'Chel's oncologist, Dr. Vrushali Dabak, examined her. (*Id.*, Pg. ID 140.)  He noted that she had experienced a motor vehicle accident, and that she complained of back and neck pain, as well as pain in her right elbow.  (*Id.*, Pg. ID 141–42.)  Dr. Dabak extended O'Chel's medical leave through November 18, 2012, but there is no indication whether this extension was related to her accident.  (Dkt. # 15, Pg. ID 139.)

O'Chel returned to Dr. Thibodeau on November 27, 2012.  (Dkt. # 17, Pg. ID 217.)  Dr. Thibodeau noted that O'Chel complained of neck pain, occasional shoulder pain during the night, and lower back pain radiating toward her right buttock.  (*Id.*) However, an examination revealed that O'Chel had no tenderness along her cervical, thoracic, parathoracic, and lumber spinal regions.  (*Id.*)  Dr. Thibodeau ordered an x-ray of her lumbar spine, but noted that she did not have any neurologic symptoms and that an MRI was unnecessary.  (*Id.* at Pg. ID 217–18.)  He further advised her regarding "the importance of appropriate posture and exercises," and recommended physical therapy. (*Id.* at Pg. ID 218.)  This second x-ray revealed mild narrowing and arthritis between two sets of vertebrae, with the remainder of the spine designated "unremarkable."

(Dkt. # 20, Pg. ID 312.)

O'Chel continued experiencing pain, and began attending physical therapy in January 2013.  At her first appointment, the physical therapist described O'Chel as having "decreased cervical extension right side-bending and right rotation, decreased left side-bending in the lumbar spine," decreased motion in both shoulders, decreased rotator cuff strength, and decreased core strength with right side lower back pain.  (Dkt. # 17, Pg. ID 221.)  The physical therapist also noted that O'Chel "has poor knowledge and understanding of her condition and self-management skills."  (*Id.* at Pg. ID 222.) O'Chel continued attending physical therapy throughout January and February 2013, with minimal improvement in her symptoms.  (*Id.* at Pg. ID 231.)

On April 12, 2013, O'Chel saw an orthopedist, Dr. Schlomo Mandel, for continued spinal pain.  Dr. Mandel found that O'Chel had "very limited motion with decreased flexion, extension, side bending, and rotation."  (*Id.* at Pg. ID 250.)  He issued a work restriction for O'Chel, stating that she could not conduct any repetitive squatting, bending, or lifting, and could not lift more than ten pounds until July 12, 2013. (*Id.* at Pg. ID 263.)  Dr. Mandel also ordered an MRI of O'Chel's lumbar spine.  Contrary to the x-rays taken in November 2012, the MRI revealed a "broad-based disc bulge" and "small central annular tear" at L3-L4, as well as a "central protrusion . . . with a small central annular tear" at L5-S1.  (*Id.* at Pg. ID 256.)  The MRI also confirmed the arthritis found in the x-rays.  (*Id.*)  A MRI of O'Chel's neck taken two weeks later revealed a slight broad-based disc bulge at C6-C7, but was otherwise unremarkable.  (*Id.* at Pg. ID 258.)  A follow-up appointment with Dr. Mandel in mid-June revealed that O'Chel continued to experience tenderness in the cervical and lumbar spine, and had limited

mobility in both areas.  (*Id.* at Pg. ID 251.)  Further physical therapy confirmed that O'Chel's spinal mobility was quite limited.  (Dkt. # 20, Pg. ID 314.)

As a result of the continued pain that she experiences, O'Chel testified that her life has changed in several ways.  First, because she has trouble standing or sitting for long periods of times, she has trouble walking her dogs.  (Dkt. # 17, Pg. ID 199.)  She is now unable to hike or ride her bicycle, both of which she enjoyed doing before her accident.  (*Id.*)  O'Chel also stated that she is no longer able to play softball, paddle ball, or frisbee, despite enjoying these activities prior to her accident.  (*Id.*)  Although she testified that she is now unable to ski, O'Chel conceded that she had not skied the year before the accident.  (*Id.*)  Lastly, O'Chel explained that at work she is no longer able to stand for the morning meeting, and in clinic, she is no longer able to apply numbing agents to patients because this requires her to stand.[1]  (*Id.* at Pg. ID 199–200.)

## II.  STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  The movant has the initial burden of showing the absence of a genuine dispute as to a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmovant, who must put forth enough evidence to show that

---

[1]O'Chel works as an ophthalmic technician.

there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted).  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Summary judgment, therefore, is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Where, as here, the court has jurisdiction because of the diversity of citizenship between the parties, the court will apply the substantive law of the state in which it sits. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009).  Thus, the court applies Michigan law to this action.

### III.  DISCUSSION

Michigan's no-fault insurance act, Mich. Comp. Laws 500.3101 *et seq.*, created a compulsory motor vehicle insurance program under which insureds recover directly from their insurers for qualifying economic losses arising from motor vehicle accidents. The act also severely curtailed tort liability by only allowing liability where "the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."  Mich. Comp. Laws 500.3135(1).  The statute imposes three prongs that are necessary to establish a serious impairment of bodily function:

(1) an objectively manifested impairment

(2) of an important body function that

(3) affects the person's general ability to lead his or her normal life.

*McCormick v. Carrier*, 795 N.W.2d 517, 526 (Mich. 2010); *see also* Mich. Comp. Laws § 500.3135(5).

> The court should determine whether there is a factual dispute regarding the nature and extent of the person's injuries, and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met.  If there is no factual dispute, or no material factual dispute, then whether the threshold is met is a question of law for the court.

*McCormick v. Carrier*, 795 N.W.2d 517, 537 (Mich. 2010).

In the instant case, there is a material factual dispute regarding the nature and extent of O'Chel's injuries which precludes summary judgment.  Regarding the first prong of the *McCormick* test, Kitchen argues that O'Chel has not established an *objectively* manifested impairment; instead, she has only presented evidence regarding her *subjective* pain.  Within the meaning of § 500.3135(5), an "'[o]bjectively manifested' [impairment] is an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function" *McCormick*, at 527.  Kitchen cites O'Chel's initial doctor's visits in the fall of 2012 as demonstrating that although O'Chel complained of neck and back pain, the x-rays that Dr. Thibodeau ordered did not show any impairment of her spine, aside from mild degenerative changes.

If this were the only evidence in the record, O'Chel's case would rest on infirm ground.  However, O'Chel presents evidence showing that, following her initial doctor appointments, she continued to experience neck and back pain, eventually being referred for physical therapy.  The physical therapy provided limited relief, and Dr. Mandel, an orthopedist, ordered a pair of MRIs to further ascertain O'Chel's condition. These MRI's revealed bulging discs, and annular tears in O'Chel's lumbar region, as well as a slight broad-based disc bulge in her neck.  Further physical therapy has demonstrated that O'Chel continues to experience neck and back stiffness, and limited

range of motion and pain throughout her spine.  Although Kitchen doubts the sincerity of

O'Chel's self-reported pain, there exists objective medical evidence that could support a

finding that O'Chel's back is, in fact, injured.

Kitchen cites *Houthoofd v. Chapman*, No. 313039, 2014 WL 605596 (Mich. Ct.

App. Feb. 13, 2014), to argue that a reasonable jury could not conclude that O'Chel

suffered an injury as a result of her collision with Kitchen. In *Houthoofd*, the plaintiff also

had an extensive medical history, including knee, lower back, neck, and right shoulder

problems.  *Id.* at * 1.  After the defendant hit the plaintiff's car while he was backing up

his pick-up truck, the plaintiff claimed to experience severe hand tremors.  However, two

neurologists examined the plaintiff, and both concluded that there was no physiological

support for her hand tremors, and that the tremors appeared to be a "psychogenic

problem." *Id.*  The Arenac County Circuit Court granted summary disposition to the

defendant, and the Michigan Court of Appeals affirmed, reasoning that the plaintiff had

not identified the cause of the tremors and had presented no evidence indicating that

they were caused by a neurologic disorder as a result of the accident.  *Id.* at *2.  In

contrast, although O'Chel's doctors were initially unable to confirm a physical cause for

her symptoms, the MRIs revealed disc bulges and tears in her spinal column, both of

which could account for the pain and stiffness she claims to  experience.  Thus,

*Houthoofd* is distinguishable.

Kitchen also argues that there is no evidence upon which a reasonable jury could

infer that O'Chel's injuries were caused by the accident with Kitchen.  Kitchen points to

O'Chel's substantial medical history involving breast cancer, a mastectomy,

chemotherapy, and radiation, and asserts that her back and neck pain could have been

caused by any of these ailments. This is a plausible interpretation of the facts; however, "the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497. Based on the facts in the record, O'Chel first experienced neck and back pain in the days immediately following the accident. This neck and back pain has since been corroborated by MRIs which show damage to both her lumbar and cervical spine. A reasonable jury could infer that given that O'Chel did not report any neck or back pain to her doctors prior to the accident, the intervening car crash caused the pain she is currently experiencing. The court therefore concludes that O'Chel has established that she suffers from an objectively manifested impairment resulting from the car accident.

The second prong of the *McCormick* test requires that the impairment be "of an important body function." *McCormick*, 795 N.W.2d at 526. This is "an inherently subjective inquiry that must be decided on a case-by-case basis, because what may seem to be a trivial body function for most people may be subjectively important to some, depending on the relationship of the function to that person's life." *Id.* at 528. The court finds it to be an unremarkable assertion that the ability to move one's spine and neck is an "important body function," and Kitchen does not offer meaningful argument to the contrary. *See, e.g.*, *Wertheimer v. Walker*, No. 238686, 2003 WL 1879927, at *1 (Mich. Ct. App. April 15, 2003).

The last prong of the *McCormick* test requires the court to compare the plaintiff's life "before and after the incident," in order to determinate whether the impairment affected the plaintiff's "capacity to live in his or her normal manner of living." *McCormick*, 795 N.W.2d at 530. This is an inherently subjective fact and person-specific

inquiry that "must be decided on a case-by-case basis." *Id.* "[T]he statute merely requires that a person's general ability to lead his or her normal life [be] *affected*, not destroyed." *Id.* (emphasis in original).  Kitchen argues that O'Chel does not meet this prong as she has been able to return to work, and only claims that she is no longer able to participate in "pick-up summer games on the beach or in winter hiking or skiing, events in which she admittedly only partook a few times a year before the accident." (Dkt. # 15, Pg. ID 100.)

This is not an accurate reflection of the record.  Rather, O'Chel testified that she is unable to stand and experiences discomfort sitting for long periods of time, which has affected her work duties as she is no longer able to apply numbing agent to her patients. (Dkt. # 17, Pg. ID 199–200.)  Further, she testified that she is no longer able to garden, walk her dogs, ride her bike, hike in the woods, or participate in any of the summer activities she previously enjoyed.  (Dkt. # 17, Pg. ID 191, 199.)  Her medical records also reflect that she experiences trouble sleeping, and has difficulty with basic dressing and grooming due to her back and neck pain.  (*See, e.g.*, Dkt. # 17, Pg. ID 221.)  Taken in the light most favorable to O'Chel, a reasonable jury could conclude that her general ability to lead her normal life has been affected by the accident.  Kitchen's motion for summary judgment is therefore denied.

## IV.  CONCLUSION

Accordingly,

IT IS ORDERED that Kitchen's "Motion for Summary Judgment" (Dkt. # 15) is

DENIED.

 s/Robert H. Cleland     
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  May 27, 2014


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 27, 2014, by electronic and/or ordinary mail.

 s/Lisa Wagner     
Case Manager and Deputy Clerk
(313) 234-5522
